THE bill was to enjoin a judgement, founded on an award-.. The plaintiff, in September,.1783,.agreed to purchase 150 acres of land from the defendent for 200 pounds, and, some weeks afterwards, executed two bills penal- for payment, one of 100 pounds, and the other of 15G.-pounds,.to-the defendent, on or before the 25 day of december, in, the same year.
The defendents design in taking one bill, which the plaintiff reluctantly signed, for 150 pounds, instead of 100 pounds only according to the agreement, was, by subjecting the plaintiff, to the penalty of 50 pounds, to secure punctual, payment or an equivalent, this, if it were not confessed by the defendent,,in his answer, would' be manifést by a memorandum’ on the same paper, signed by"him, purporting to be an' agreement that the bill might be dischai'ged by payment of 100 pounds, on or before the 25 day of december then next, or by delivering to thedefendent a bond which he had given for 100 pounds payable, to' "Henry Garrett the 10 day of iebruary thereafter; and that, the plaintiff had liberty til that day to procure the bond.
Henry Garrett had promised the defendent, at his request, the time of which request doth not appear, not to part with this bond, before the money should become payable.
The plaintiff, a few days before the day of payment, applied to Henry Garrett, and proposed to take up the bond, offering to give his own bond, with a surety, for payment of the money, to which Henry Garrett would have consented, if he had not made the promise ; although he had agreed to assign the same bond, when the -money should be payable, to David Garth, if a contract made with him should not be discharged otherwise. Henry Garrett referred the plaintiff'to Garth that by a treaty be *115 tween them the plaintiff might obtain the bond, a treaty was accordingly between them, hut without effect at that time, Garth refusing to accept the plaintiffs, in exchange for the defendents, bond, from whom the money, or a negro in part payment, was expected.
On the 8 day of november, 1784, tho defendent paid 141. Gs. 2d. to Garth, now tho holder of the bond, by which, after 31. 14s. 3d. deducted for interest, 891. ite. Id. of principal money, remained due.
David Garth, on tho 19 day of ibbr'*d'iy,_ri85, assigned the .bond, for the money then due by in Was 901. 13s. 3d. to the plaintiff, and ho ten days afterwnrdXwas preparing to deliver-it, with 70 1. 6s. Od. in money, to the defendent, who ■ eluded a formal tender -thereof, so soon as he discovered the plaintiffs intention, by withdrawing abruptly, yet the defendent - on the bill penal for the 150 pounds endorsed a credit for Henry • Garretts bond.
The defendent having commenced actions at common law on ;the bills penal, in the county court of Spotsylvania, and the ¡plaintiff having confessed a judgement for 41 pounds, which was three pounds and some shillings less than was due to the ■ defendent, if the plaintiff were chargeable by both the bills pernal with no more than two hundred pounds of principal money; by consent of parties, on the 3 day of november-, 1785, all other matters in difference between them, respecting those >>wits, were .refered to the final determination of Joseph Brock, William : Smith.,.Bdward Herndon, and James Lewis, or any three of them, whose award,thereupon was to be made the judgement of the court; and all errors in the procedings were released.
Three of these referees reported, that having heard the parties, and examined their accounts and papers, they found a balance due to the plaintiff (who is defendent in this suit) of 551. 16s. 6</. exclusive of the judgement confessed for 41 pounds, and iawarded the present plaintiff to pay the 55 l. 16s. 6 d. with infer-est from the date of that act, and costs to the present defendent. according to which award the judgement sought to be enjoined was entered.
T-m of the referees, examined as witnesses, deposed, that wl ¡ ’’ey were appointed arbitrators, and undertook the office, winch KA frequently happened, they supposed themselves judges both of low and equity ; and confessed that to them the d? font lent o-- hit: attorney read a state of his case, but do not rememÍK-r wfe ¡ihiv ii¡e rehearsal had or had not influence on the referees ; ;<nd by on e of them this question, which the defendent prono.-1 „ were not the parties and their attorneys *116 heard with patience; and were not their accounts and other pampers examined; and all other testimony that was offered by, either party at the trial properly attended to ? was reported by the commissioners, who took the examination, to have been answered in the affirmative.
Two witnesses, attending the referees, on behalf of the plaintiff, were not examined by them, who declared it was not worth, while to examine any witnesses, nor do they appear to have examined any.
The plaintiff excepted to reading the statement of facts by the defendent, which ¿ap-jjgrtheless was read by him and his attorney, before the arbitrators-,, and seems to have been admitted, although the plaintiff aUmged that he could disprove some of the facts by witnesses, if the arbitrators would examine them.
The memorandum on the bill penal for 150 pounds had been tom off by the defendent, although it was produced, with other papers, to the referees.
At the hearing, 20 day of may, 1791, the high court of chancery delivered this
OPINION,
That the defendent, in prosecution of a design to gain and' secure to himself a profit illegal and unrighteous, was guilty of' fraud, both in tearing the memorandum from one of the bills penal, and in obstructing the plaintiff in the procurement of Henry Garretts bond, mentioned in the memorandum ; (a), and that the referees, in deciding the difference submitted to them, acted in such a manner that the award made by them ought to be set aside ; and
Decreed a perpetual injunction to the whole judgement, awarding to the ■ plaintiff the costs in the action wherein thejudgement was given, with the costs of the suit in equity.
The court of appeals* before whom the cause was brought *117 by the defendent, 17th day of October, 1792, pronounced the following
OPINION ANB DECREE,
‘ That there is error in the said decree, in making the injunction therein stated perpetual, as to the whole judgement for fifty-five pounds sixteen shillings and six pence, and the interest, whereas three pounds twelve shillings and eight pence, part thereof, appears by the record to have been due to the appellant, on the 3 day of november, 1785, for the balance of the bond for 100 pounds and the money paid by the appellant to Garth in part of his bond to Garret and interest to that time, over and above the 41 pounds, for which judgement was on that day confessed, and made no part of the 50 pounds and interest in dispute between the parties ; that as to the said 50 pounds and interest there is no error in the said decree, the court, being of ■opinion that the said 50 pounds, was to be considered as a penalty for further inforcing the payment of 100 pounds, or procuring an assignment of the appellants bond to Garret for that sum, against which penalty the appellee was intitled to relief in equity, not only by the general principles of that court, to relieve against penalties on making compensation, but, because in in this case, the appellee was prevented in performing one of the alternatives by the interposition of the appellant, and that the said decree is not erroneous as to the costs at law, more money appearing to have been tendered to the appellant before ■suits brought than was due to him at that time. Therefore it is decreed and ordered that the said decree be reversed and annulled as to 31. 12s. 8d. part of the judgement for 551. 16s 6d. with interest from the 3 day of november, 1785, that the injunction obtained by the appellee in the said high court of chancery ho dissolved as to so much; that the residue of the said decree be affirmed, and that the appellee pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here.
REMARKS.
The court of chancery is confessed to have erred in perpetuating the injunction to the whole judgement, an account was not stated, as it ought to have been, at the hearing, to shew that the money due from the plaintiff to the defendent was between three and four pounds more than the 41 pounds, for which the judgement had been confessed.
Upon the main question in the case, namely, whether the *118 plaintiff ought to he relieved by a court of equity against the judgement? the opinion of the court of appeals is stated in these terms, that the said 50 pounds was tobe considered as a penalty for further enforcing the payment of 100 pounds, or procuring an assignment of the defen dents bond to Garret for that sum, against which penalty the plaintiff was intitled to relief in equity, not only by the general principles of that court, to'relieve against penalties on making compensation, but, because in this case the appellee was prevented in performing one of the alternalives by the interposition of the appellant, by which that court is supposed to have considered the' case in the same manner as if no award had been made in it: and consequently to have established this position, that a court of equity hath power to relieve against a judgement founded upon an award, if the award appear to be contrary to the principles of equity, and if, as in the present case, the party, in whose- favor the award is, had by his interposition prevented the other party from performing something whereby he would have sa-ved a penalty, which he was condemned by the award to pay ; and this, notwithstanding the whole matter discussed before the court of equity had been discussed before the arbitrators:
That, in this case, the matters discussed' before- the court of chancery were discussed before the arbitrators is manifest by the exhibits and testimony, the question controverted between the parties, before both tribunals, being only, whether the defendent ought or ought not to have the fifty pounds penalty ?
The act of the arbitrators may be understood therefore in the same sense as if their sentence had been declared in these terms": upon the two questions controverted between the parties we are of opinion, 1, that the defendent (that is the plaintiff in the court of chancery) ought not to be relieved against the penalty of fifty pounds, upon making reparation for all damage sustained by his failure to deliver to the plaintiff (that is the defendent in the court of chancery) his bond to Henry Garret, within the time limited, (b) and 2, that the plaintiff is intitled to the fifty pounds penalty, although it was incurred by his act and default, the one, in obtaining a promise from Henry Garret not to part with the bond before a certain time, and the other, in not having released Henry Garret from the promise before the 'defendent applied to him for the bond, and therefore we da order and award, that the defendent pay to the plaintiff 55116s *119 6d. the principal money, including that penalty, found due to him from the dependent, exclusive of the 41 pounds for which judgement hath been confessed, with interest from this time-, and costs.
Let us admit the opinion of the arbitrators to have been erroneous -in each questionhath any court, for that reason only, power to correct their sentence ?
The object of these compromissary disceptations is to prevent the expense, delay, turbulence, and ether inconveniences of forensic litigation, the parties intend the determination of the arbitrators to bo final, it is so declared in the formula by which the controversy is submitted to their determination, it was so declared in the submission in this case.
When parties differ in opinion, or pretend to differ in opinion, each thinks, or pretends to think, the opinion of the other wrong, the question then between them is which is right? unable theirselves to decide this question they empower other men to decide it for them, the submission to those men imports an agreement by each party that he will allow to be right that opinion which the arbitrators determine to be right, the judgement of the arbitrators therefore is the judgement of the parties, he whose former opinion the arbitrators condemn is selfcondemned. ‘this is believed to be the genuine ratio which breathes in the trite argument, against rescission of awards, unless for some misbehaviour in the arbitrators, namely, that they are judges chosen by the parties themselves, the choice of parties cannot make the arbitrators abler judges, and if the arbitrators may justly be suspected of inclination to favor the party who chose them, they ought not to be chosen, nor ought their sentence to bind the other party, if he knew not the cause of suspicion, from the sentence of arbitrators no direct appeal lieth to any court, accordingly courts of appeal are appointed ■to reverse and correct the decisions of courts which form part of the judiciary system, not to reverse and correct the decisions ■of judges whom the parties appoint to adjust their disputes.
This doctrine is not peculiar to us, nor to our times.
In Athens, the sentences of their diallacterioi, who were judges chosen by the parties, differing from our arbitrators only in being sworn, were not reversible, as we learn from the oration of Demosthenes against Midias.
By the roman civil law arbitrormn genera sunt duo, unum •ejusrnodi, ut sive aequum sit, sive iniquum, parere debeamus: quod observatur, cum ex promisso ad arbitrium itwm est. Dig. lib. XVII. tit. LVI. 1. 76. qualem autem sententiam dicat arbiter, adpraetorem non periinere, Labeo ait, dummodo dicat quod ipsi videtur. Dig. lib. IV. tit. VIII.
*120 In many cases, however, a refusal to abide by an award' is-justifiable, and in such cases the magistrate, without whose authority execution of the sentence cannot be enforced, may, not . only deny his aid but, abrogate the sentence, for example, 1,. where an 'arbitrator giveth sentence for the party by whom he is .bribed, or giveth sentence for one party, moved by good will toward him, or ill will toward his adversary; because the arbitrator is disqualified to perform the office undertaken by him, that is, the office of a judge, who ought to give the sentence which the praecepts of justice dictate, not the sentence which corruption in the one case, or affection or malice, in the other cases, may prompt: the sentence of a judge, who thereby earneth sordid wages, or gratifieth a vicious passion, is no less a void act, than it would be, if he were to gain a part of the thing in controversy. 2, where the arbitrator giveth sentence for one party whom he doth hear, without hearing the other party, or giveth sentence without hearing either party, or, after hearing both, without bestowing convenient time in deliberating on the subject of controversy ; because he doth not perform the office of a judge, which is to decide after hearing both parties, and to decide after duly deliberating on their allegations, the former being idle, if not rendered momentous by the other.' 3, where the award itself is shewn to be such as could not not have been made without corruption, improper influence, (c) or precipitancy in the arbitrator, which hath frequently happened.
The writer of these remarks perhaps hath’ mistaken the decree of the court of appeals, if not, he aks whether it be not a decree primae impressionis, and whether it doth not constitute every court of equity a court of appeal from awards ?

 The court of chancery would not, for this reason only, have set-aside the'/ award, if the arbitrators had not appeared to have acted improperly; because/ the sentence of arbitrators, even if to a court it seem unjust, was {heretofore thought to be definitive : but the arbitrators were believed to have'misbehaved in refusing to examine witnesses produced by the plaintiff, whose testimony/appeareth, by their written examinations, to have been pertinent and important, and might and probably would have contradicted or represented differently the facts stated by the defendent before the arbitrators, and supposed to have been admitted by them.

[The report of this case in the Court of Appeals is in 1 Was. 119. See Groves v. Graves, 1 Wash. 1, — Ed]

 In truth no damage was sustained; but the plaintiff derived no less benefit from the defendents procurement of the bond, at the time when it was procured, than he would have derived from a procurement before expiration of the time limited.

 See the next case, Beverley v. Remolds.